# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ROBERT A. CUTLER,<br><br>                Plaintiff,<br><br>      v.<br><br>CIGNA CORPORATION, CIGNA HOLDINGS, INC., CONNECTICUT GENERAL CORP., HEALTHSPRING, INC., NEW QUEST LLC, HEALTHSPRING LIFE & HEALTH INSURANCE COMPANY, INC., GULF QUEST LP, PHYSICIANS MANAGEMENT LLC, and ALEGIS CARE SERVICES, LLC,<br><br>              Defendants. | **Case No. 3:21-cv-00748**<br>**JUDGE RICHARDSON**<br>**MAGISTRATE JUDGE FRENSLEY** |
| UNITED STATES OF AMERICA,<br><br>             Plaintiff-Intervenor,<br><br>      v.<br><br>THE CIGNA GROUP, BRAVO HEALTH MID-ATLANTIC, INC., BRAVO HEALTH PENNSYLVANIA, INC., CIGNA HEALTH & LIFE INS. CO., CIGNA HEALTHCARE OF CALIFORNIA, INC., CIGNA HEALTHCARE OF COLORADO, INC., CIGNA HEALTHCARE OF CONNECTICUT, INC., CIGNA HEALTHCARE OF GEORGIA, INC., CIGNA HEALTHCARE OF NORTH CAROLINA, INC., CIGNA HEALTHCARE OF SOUTH CAROLINA, INC., CIGNA HEALTHCARE OF ST. LOUIS, INC., HEALTHSPRING OF FLORIDA, INC., and HEALTHSPRING LIFE & HEALTH INS. CO.,<br><br>             Defendants. | **STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL** |

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among (i) plaintiff the United States of America (the "United States" or "Government"), by its attorneys, Damian Williams, United States Attorney for the Southern District of New York, and Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and on behalf of the Office of Inspector General for the Department of Health and Human Services ("OIG-HHS"); (ii) relator Robert A. Cutler ("Relator"), by his authorized representatives; and (iii) defendants The Cigna Group, Bravo Health Mid-Atlantic, Inc., Bravo Health Pennsylvania, Inc., Cigna Health & Life Ins. Co., Cigna Healthcare of California, Inc., Cigna Healthcare of Colorado, Inc., Cigna Healthcare of Connecticut, Inc., Cigna Healthcare of Georgia, Inc., Cigna Healthcare of North Carolina, Inc., Cigna Healthcare of South Carolina, Inc., Cigna Healthcare of St. Louis, Inc., HealthSpring of Florida, Inc., and HealthSpring Life & Health Ins. Co. (collectively "Cigna" or "Defendants," and together with the United States and Relator, the "Parties"), by their authorized representatives;

WHEREAS, Cigna is a global health services company that provides covered benefits to Medicare beneficiaries under the Medicare Advantage Program, also known as Medicare Part C;

WHEREAS, under the Medicare Advantage Program, the Centers for Medicare and Medicaid Services ("CMS") makes monthly capitated payments to Medicare Advantage organizations ("MA Organizations") that administer Medicare Advantage healthcare plans for each beneficiary enrolled in those plans, which payments are adjusted to reflect the predicted cost of insuring each beneficiary;

WHEREAS, CMS relies on "risk adjustment" data, including medical diagnosis codes submitted by MA Organizations, to determine the capitated payments to be paid for each beneficiary enrolled in a Medicare Advantage plan;

WHEREAS, this payment model is designed to pay MA Organizations more to provide health care for sicker enrollees (expected to incur higher healthcare costs) and less for healthier enrollees (expected to incur lower costs);

WHEREAS, MA Organizations are required under their contract with CMS and pursuant to federal regulations to certify the "accuracy, completeness, and truthfulness" of the risk adjustment data submitted to CMS;

WHEREAS, on or about October 2, 2017, Relator filed a complaint (the "Relator Complaint") in the U.S. District Court for the Southern District of New York under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Cigna Corporation and affiliates, alleging, *inter alia*, that they violated the FCA by submitting diagnosis codes to CMS for risk adjustment purposes that were identified in connection with home visits to Cigna beneficiaries by vendors retained by Cigna and were unsupported, inaccurate, or otherwise invalid, ECF Nos. 1, 94, and Relator has since filed three amended complaints in this action, ECF Nos. 12, 256, 264;

WHEREAS, on February 25, 2020, the Government notified the New York district court that it was declining to intervene with respect to certain of the claims and allegations in the Relator Complaint but continuing to investigate others, *see* ECF No. 13;

WHEREAS, on August 3, 2020, the New York district court unsealed the case, ECF Nos. 11, 14;

WHEREAS, on December 4, 2020, Cigna moved to transfer this action to the U.S. District Court for the Middle District of Tennessee, ECF No. 71, and the New York district court granted the motion on September 29, 2021, ECF No. 127;

WHEREAS, on January 11, 2022, the Government filed a motion to partially intervene, ECF No. 157, and on August 2, 2022, the Court granted the Government's motion to intervene for good cause shown, ECF No. 170;

WHEREAS, on October 14, 2022, the Government filed its complaint-in-intervention in this matter, ECF No. 178 (the "Government Complaint");

WHEREAS, the Government alleges that, from January 1, 2012, through December 31, 2019 (the "Covered Period"), Cigna violated the FCA by knowingly submitting to CMS for risk adjustment purposes false and invalid diagnoses of serious, complex medical conditions that: (a) were based only on the home visits to Medicare Part C beneficiaries conducted by contracted health care providers; (b) required specific testing or imaging to be reliably diagnosed, which was not performed; and (c) were not reported to Cigna by any other healthcare provider who saw the beneficiary during the year in which the home visit occurred (the "Invalid Diagnoses"). The Government further alleges that the Invalid Diagnoses were not supported by the information documented on forms completed by the contracted providers and did not conform with the International Classification of Diseases Official Guidelines for Coding and Reporting, as required by applicable federal regulations. The Government further alleges that Cigna falsely certified on an annual basis that the diagnosis data it submitted to CMS was "accurate, complete, and truthful." As a result of the submission of the Invalid Diagnoses, the Government claims that Cigna obtained inflated risk adjustment payments from CMS to which it was not entitled. The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Cigna in the Government Complaint and the Relator Complaint, as amended, for the Covered Conduct;

4

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1. The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2. Cigna admits, acknowledges, and accepts responsibility for the following conduct (the "Admitted Conduct"):

   a. Cigna operates Medicare Advantage organizations that offer Medicare Advantage plans to beneficiaries across the United States under Medicare Part C. Cigna contracts with CMS to provide Part C beneficiaries the benefits traditionally offered under Medicare Parts A and B in return for a fixed, capitated, monthly amount for each beneficiary enrolled in Cigna's Part C Plans. These payments are determined by demographic factors and the health status of the beneficiaries. The capitated payment is based in part on each beneficiary's risk score, which is in turn based on risk adjustment data, including diagnosis codes, submitted by Cigna.

   b. As a condition of participating in the Part C program, Cigna attested that the risk adjustment data it submitted to CMS for Part C purposes was "accurate, complete, and truthful" based on its best "knowledge, information, and belief."

   c. During the Covered Period, Cigna operated what it termed the "360 Program," pursuant to which it contracted with providers and vendors to conduct health assessments of its members.

   d. As part of the 360 Program, Cigna contracted with vendors who employed nurse practitioners or other licensed healthcare providers to conduct assessments of

Part C members in their homes. The vendor healthcare providers, among other things, performed physical exams and documented diagnostic information on standardized forms provided or approved by Cigna, but in many cases were not permitted to provide treatment or prescriptions for medications. Cigna's medical coding team reviewed the completed "360" forms and, based on that review, identified diagnosis codes that corresponded to the medical conditions checked off on the forms, which were then submitted to CMS as part of Cigna's risk adjustment data.

e. The forms utilized by Cigna's vendors listed a wide range of diagnoses, including complex medical conditions.

f. Cigna tracked the volume and nature of the diagnoses generated by vendors' home visits. Cigna also tracked how the diagnoses affected risk-adjusted payments.

g. According to diagnostic criteria disseminated by Cigna to the vendors, the clinical assessment of some of these diagnoses relies on laboratory evaluation, diagnostic imaging, or other diagnostic testing when making a particular diagnosis for the first time. In many cases, Cigna did not require 360 Program vendors conducting in-home assessments to have the equipment available to conduct such laboratory testing, imaging, or other diagnostic testing when diagnosing these conditions.

h. In thousands of instances, the in-home assessments conducted by 360 Program vendors resulted in diagnoses of Cigna members, and the submission to CMS of resulting risk-adjusting diagnosis codes, that had not been previously

6

reported to CMS by Cigna from any other encounter with a healthcare provider during the year in which the home visit occurred.

i. Based on the in-home assessments of members completed by vendors pursuant to the 360 Program, in many instances Cigna reported to CMS diagnoses for Medicare Advantage Plan members where the 360 forms did not include clinical information that corroborated the diagnoses and did not reflect that the diagnostic testing necessary to make the diagnosis for the first time had been performed.

3. Defendants shall pay to the Government within fourteen (14) business days of the Effective Date (defined below in Paragraph 31) the sum of $37,000,000, plus interest which shall be compounded annually at a rate of 3.875% accruing from September 19, 2023, to the date of the payment (the "Settlement Amount"), in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York. Of the Settlement Amount, $18,500,000 constitutes restitution to the United States.

4. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any

7

investigation of the Covered Conduct that it has undertaken, or that has been performed by another on their behalf.

5.     Subject to the exceptions in Paragraph 10 (concerning reserved claims) below and subject to Paragraph 11 (concerning default) and Paragraph 16 (concerning bankruptcy proceedings) below, and conditioned on Defendants' full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above, the United States releases Defendants, including their subsidiaries and corporate predecessors, successors and assigns, from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, and the common law theories of fraud, payment by mistake, and unjust enrichment.  For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Defendants from liability of any kind.

6.     Defendants fully and finally release the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct or the United States' investigation, prosecution and settlement thereof.

7.     In consideration of Defendants' obligations in this Stipulation and the Corporate Integrity Agreement ("CIA") entered into between OIG-HHS and The Cigna Group, and conditioned upon Defendants' full payment of the Settlement Amount, and except as expressly reserved in this Paragraph and Paragraph 10 (concerning reserved claims), OIG-HHS agrees to

release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid and the Federal health care programs set forth in 42 U.S.C. § 1320a-7b(f) against The Cigna Group under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct. OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude The Cigna Group from Medicare, Medicaid and other Federal health care programs based upon the Covered Conduct. Nothing in this Paragraph precludes OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 10 below.

8.     Subject to the exceptions in Paragraph 10 (concerning reserved claims) below and subject to Paragraph 11 (concerning default) and Paragraph 16 (concerning bankruptcy proceedings) below, and conditioned on Defendants' full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above and full payment of attorneys' fees pursuant to a separate agreement between Relator and Cigna, Relator, for himself and his heirs, successors, attorneys, agents, and assigns, releases Defendants as well as all of the entities named in the Relator Complaint, as amended, including their subsidiaries and corporate predecessors, successors and assigns, as well as all of their current and former officers, directors, employees, attorneys, and other agents, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Relator has against them, including under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9.     In consideration of the execution of this Stipulation by Relator and the Relator's release as set forth in Paragraph 8 above, Defendants, including their subsidiaries, predecessors,

and corporate successors and assigns, as well as all of their current and former officers, directors, employees, attorneys, and other agents, release Relator and his heirs, successors, attorneys, agents, and assigns, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Defendants have against Relator related to or arising from the Relator Complaint, as amended.

10. Notwithstanding the releases given in Paragraph 5 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

    a. any liability arising under Title 26, United States Code (Internal Revenue Code);

    b. any criminal liability;

    c. except as explicitly stated in this Stipulation, any administrative liability or administrative enforcement right, including mandatory exclusion from Federal health care programs;

    d. any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. any liability based upon obligations created by this Stipulation;

    f. any liability of individuals;

    g. any other current or future claims or causes of action relating to Cigna's and its subsidiaries' and/or affiliates' submission of diagnosis data to CMS for risk adjustment payments under Part C and/or Part D of the Medicare Program; and

    h. Any liability from future risk adjustment model runs and reruns of final risk scores or any payment adjustments due to The Cigna Group's submission of

auditable estimates pursuant to the Risk Adjustment Overpayment Reporting (RAOR) process.

11.     Defendants shall be in default of this Stipulation if they fail to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if they fail to comply materially with any other term of this Stipulation that applies to them ("Default"). The Government will provide a written Notice of Default to Defendants of any Default in the manner set forth in Paragraph 30 below. Defendants shall then have an opportunity to cure the Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due and paying any additional interest accruing under the Stipulation up to the date of payment. If Defendants fail to cure the Default within seven (7) calendar days of receiving the Notice of Default ("Uncured Default"), interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance). In the event of an Uncured Default, Defendants shall agree to the entry of a consent judgment in favor of the United States against Defendants in the amount of the Settlement Amount as attached hereto as Exhibit A. Defendants also agree that in the event of an Uncured Default the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Stipulation, and reinstate the claims asserted against Defendants in the Government Complaint, or bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 5, with any recovery reduced by the amount of any payments previously made by Defendants to the United States under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the Government Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants and/or affiliated companies by

any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendants agree immediately to pay the United States the greater of (i) a ten percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, Defendants waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that (i) are filed by the United States against Defendants within 120 days of written notification that this Stipulation has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on October 2, 2017. Defendants agree not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

12.     Defendants, having truthfully admitted to the conduct set forth in Paragraph 2 hereof, agree that they shall not, through their attorneys, agents, officers, or employees, make any public statement, including but not limited to, any statement in a press release, social media forum, or website, that contradicts or is inconsistent with the Admitted Conduct or suggests that the Admitted Conduct is not wrongful (a "Contradictory Statement"). Any Contradictory Statement by Defendants, their attorneys, agents, officers, or employees, shall constitute a violation of this Stipulation, thereby authorizing the Government to pursue any of the remedies set forth in

Paragraph 11 hereof, or seek other appropriate relief from the Court. Before pursuing any remedy, the Government shall notify Defendants that it has determined that Defendants have made a Contradictory Statement. Upon receiving notice from the Government, Defendants may cure the violation by repudiating the Contradictory Statement in a press release or other public statement within four business days. If Defendants learn of a potential Contradictory Statement by their attorneys, agents, officers, or employees, Defendants must notify the Government of the statement within 24 hours. The decision as to whether any statement constitutes a Contradictory Statement or will be imputed to Defendants for the purpose of this Stipulation, or whether Defendants adequately repudiated a Contradictory Statement to cure a violation of this Stipulation, shall be within the sole discretion of the Government. Consistent with this provision, Defendants may raise defenses and/or assert affirmative claims or defenses in any proceeding brought by private and/or public parties, so long as doing so would not contradict or be inconsistent with the Admitted Conduct.

13. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation; Relator agrees and confirms that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

14. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

15. Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the

Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

16.    In exchange for valuable consideration provided in this Stipulation, Defendants acknowledge the following:

    a.  Defendants have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

    b.  In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

    c.  The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

    d.  The Parties do not intend to hinder, delay, or defraud any entity to which Defendants were or became indebted on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

    e.  If any of Defendants' obligations under this Stipulation are avoided for any reason (including but not limited to through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid

in full, Defendants or a third party commence a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendants' debts, or to adjudicate Defendants as bankrupt or insolvent, or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets:

i. the United States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 5;

ii. the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendants in the amount of $37,000,000, less any payments received pursuant to the Stipulation, provided, however, that such payments are not otherwise avoided and recovered from the United States by Defendants, a receiver, trustee, custodian, or other similar official for Defendants; and

iii. if any payments are avoided and recovered by Defendants, a receiver, trustee, custodian, or similar official for Defendants, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return any portions of such payments already paid by the United States to Relator.

f. Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 16(e) above is not

subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on October 2, 2017.

17.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

18.     Defendants agree to the following:

   a.   Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395*lll* and 1396-1396w-7; and the regulations and official program directives promulgated thereunder) incurred by or on

behalf of Defendants, including their present or former officers, directors, employees, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the United States' audit(s) and civil investigation(s) of matters covered by this Stipulation;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation;

(5) any payment Defendants make to the United States pursuant to this Stipulation and any payment Defendants may make to Relator, including expenses, costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs"). However, nothing in Paragraph 18(a)(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowed based on any other authority applicable to Defendants.

17

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Within 90 days of the Effective Date of this Stipulation, Defendants shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment. Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to disagree with any calculation submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants' or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

19. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

20. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

21. Upon receipt of the payment described in Paragraph 3 above, the Parties shall promptly sign and file a joint stipulation to dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1).

22. Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

19

23. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Middle District of Tennessee.

24. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties. No prior agreements, oral representations or statements shall be considered part of this Stipulation.

26. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

27. This Stipulation is binding on Defendants' successors, transferees, heirs, and assigns.

28. This Stipulation is binding on Relator's successors, transferees, heirs, and assigns.

29. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

30. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Peter Aronoff
Jean-David Barnea
Samuel Dolinger
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
peter.aronoff@usdoj.gov
jean-david.barnea@usdoj.gov
samuel.dolinger@usdoj.gov

Ellen Bowden McIntyre
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
ellen.bowden2@usdoj.gov

TO DEFENDANTS:

David W. Ogden
Howard M. Shapiro
Charles C. Speth
Kevin M. Lamb
WILMER CUTLER PICKERING
HALE & DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
david.ogden@wilmerhale.com
howard.shapiro@wilmerhale.com
charles.speth@wilmerhale.com
kevin.lamb@wilmerhale.com

TO RELATOR:

Tara L. Swafford
W. Lee Maddux
Elizabeth G. Hart
The Swafford Law Firm, PLLC
321 Billingsly Court, Suite 19
Franklin, TN 37067
tara@swaffordlawfirm.com
lee@swaffordlawfirm.com
betsy@swaffordlawfirm.com

31. The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: September 29, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____

PETER ARONOFF (pro hac vice)
JEAN-DAVID BARNEA (pro hac vice)
SAMUEL DOLINGER (pro hac vice)
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2679/2697/2677
peter.aronoff@usdoj.gov
jean-david.barnea@usdoj.gov
samuel.dolinger@usdoj.gov

Dated: September 29, 2023

HENRY C. LEVENTIS
United States Attorney for the
Middle District of Tennessee

By: _____

ELLEN BOWDEN MCINTYRE
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Tel.: (615) 736-5151
ellen.bowden2@usdoj.gov

*Counsel for the United States*

Dated: September 29, 2023

Office of the Inspector General, the U.S.
Department of Health and Human Services

By: _____

LISA M. RE
Assistant Inspector General for Legal Affairs

23

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: September 29, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____

PETER ARONOFF (pro hac vice)
JEAN-DAVID BARNEA (pro hac vice)
SAMUEL DOLINGER (pro hac vice)
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2679/2697/2677
peter.aronoff@usdoj.gov
jean-david.barnea@usdoj.gov
samuel.dolinger@usdoj.gov

Dated: September 29, 2023

HENRY C. LEVENTIS
United States Attorney for the
Middle District of Tennessee

By: _____

ELLEN BOWDEN MCINTYRE
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Tel.: (615) 736-5151
ellen.bowden2@usdoj.gov

*Counsel for the United States*

Dated: September 29, 2023

Office of the Inspector General, the U.S.
Department of Health and Human Services

By: LISA RE  Digitally signed by LISA RE
Date: 2023.09.29 17:24:05
-04'00'
_____

LISA M. RE
Assistant Inspector General for Legal Affairs

**RELATOR ROBERT A. CUTLER**

Dated: September 29, 2023

Robert A. Cutler

Dated: September 29, 2023

THE SWAFFORD LAW FIRM, PLLC

By:

Tara L. Swafford
W. Lee Maddux
Elizabeth G. Hart
321 Billingsly Court, Suite 19
Franklin, TN 37067
Tel.: (615) 599-8406
tara@swaffordlawfirm.com
lee@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Counsel for the Relator*

**DEFENDANTS**

Dated: September 29, 2023

The Cigna Group

By: _Geneva Brown_
Geneva Brown
Assistant Secretary

Dated: September 29, 2023

Bravo Health Mid-Atlantic, Inc.

By: _Geneva Brown_
Geneva Brown
Corporate Secretary

Dated: September 29, 2023

Bravo Health Pennsylvania, Inc.

By: _Geneva Brown_
Geneva Brown
Corporate Secretary

Dated: September 29, 2023

Cigna Health & Life Ins. Co.

By: _Geneva Brown_
Geneva Brown
Corporate Secretary

Dated: September 29, 2023

Cigna Healthcare of California, Inc.

By: _Geneva Brown_
Geneva Brown
Assistant Secretary

Dated: September 29, 2023

Cigna Healthcare of Colorado, Inc.

By: _Geneva Brown_
Geneva Brown
Secretary

Dated: September 29, 2023

Cigna Healthcare of Connecticut, Inc.

By: _Geneva Brown_____

Geneva Brown
Secretary

Dated: September 29, 2023

Cigna Healthcare of Georgia, Inc.

By: _Geneva Brown_____

Geneva Brown
Secretary

Dated: September 29, 2023

Cigna Healthcare of North Carolina, Inc.

By: _Geneva Brown_____

Geneva Brown
Secretary

Dated: September 29, 2023

Cigna Healthcare of South Carolina, Inc.

By: _Geneva Brown_____

Geneva Brown
Secretary

Dated: September 29, 2023

Cigna Healthcare of St. Louis, Inc.

By: _Geneva Brown_____

Geneva Brown
Secretary

Dated: September 29, 2023

HealthSpring of Florida, Inc.

By: _Geneva Brown_____

Geneva Brown
Corporate Secretary

Dated: September 29, 2023

HealthSpring Life & Health Ins. Co.

By: _Geneva Brown_____

Geneva Brown
Corporate Secretary

Dated: September 29, 2023

WILMER, CUTLER PICKERING HALE
AND DORR LLP

By: _David W. Ogden_____

David W. Ogden (*pro hac vice*)
Howard M. Shapiro (*pro hac vice*)
Charles C. Speth (*pro hac vice*)
Kevin M. Lamb (*pro hac vice*)
WILMER CUTLER PICKERING
HALE & DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6440

Thomas K. Potter, III (TN Bar No. 024857)
J. Alex Little (TN Bar No. 029858)
BURR & FORMAN LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201

*Counsel for Defendants*

27

SO ORDERED:

Dated: _____

_____
HON. ELI RICHARDSON
United States District Judge